RACHEL M. DARVISH, ESQ.  SBN#255906
THE LAW OFFICE OF RACHEL M. DARVISH
5470 West Pico Boulevard
Los Angeles, CA 90019
TEL. 323-932-8939
FAX. 323-934-9714

ATTORNEYS FOR PLAINTIFF
MICHAEL DARVISH

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | Bankruptcy Case No.: 2-10-bk-142262-BB |
| TRIPLETT, PAULA ANN, | Adv. Case No.: 2:10-AP-01874-BB |
|     Debtor. | JURY TRIAL DEMANDED |
| | CREDITOR'S SECOND AMENDED COMPLAINT TO DETERMINE DEBT TO BE NON-DISCHARGEABLE BASED ON: |
| MICHAEL DARVISH, | |
|     Plaintiff, | |
|     vs. | 1. ACTUAL FRAUD [11 U.S.C. 523(a)(2)(A)]; |
| PAULA   ANN   TRIPLETT,   an individual;   PETER   TRIPLETT,   an individual, | 2. FRAUDULENT WRITING [11 U.S.C. 523(a)(2)(B)]; 3. FRAUDULENT OATH OR ACCOUNT [11 U.S.C. 727(a)(4)(A). |
|     Defendants. | |

Comes now Plaintiff MICHAEL DARVISH ("Plaintiff") ("DR. DARVISH") and

avers, alleges and states as follows:

### THE PARTIES AND JURISDICTION

1.      Plaintiff is, and all times herein mentioned, was an individual residing in the County of Los

Angeles, State of California.

2.      Plaintiff is   informed   and   believes   that   Defendants   PAULA   ANN   TRIPLETT

("DEBTOR") ("PAULA") and PETER TRIPLETT ("PETER")    (Collectively "Defendants" or "the Tripletts") are, and at and all times herein mentioned, were individuals residing and/or doing business in the State of California, County of Los Angeles.

3.    The acts complained of occurred within the United States Central District of Los Angeles, County of Los Angeles, State of California.

4.    This complaint is about PAULA's misuse, with the full cooperation of her husband PETER, of the bankruptcy laws by utilizing the guise of bankruptcy to further a fraud against plaintiffs, defendant Paula Triplett's largest unsecured creditor.  This complaint is a core proceeding under 28 U.S.C. § 157 (b)(1) (adversary proceeding) and 28 U.S.C. § 157 (b)(2)(I) (determination of dischargeability of debts), and is based upon defendant's violation of applicable bankruptcy laws.

5.    Defendants' actions alleged herein were joint and several as they were committed while they were married and living together as husband and wife.

6.    To plaintiff's knowledge, defendants are still legally married to each other.

7.    Defendants acted as alleged herein as the agent, employee, assign, co-venturer, partner, and associate of the other defendant, and therefore all actions of each defendant are imputed to each other defendant.

8.    Plaintiff is PAULA's largest general, unsecured creditor and therefore has standing to bring the within cause of action.

<u>CHARGING ALLEGATIONS</u>

9.    Plaintiff incorporates by reference all the allegations set forth above as though fully set forth herein.

10.    Defendants applied for and executed a one year lease in or about August 2008 of plaintiff's high end, custom built residential property located at 1148 Las Pulgas Road, Pacific Palisades, CA 90272 ("the premises").    The lease application and lease agreement itself were procured via email, while the Tripletts were still living in the United Kingdom.  A true and accurate copy of the lease agreement and lease application are attached as

EXHIBIT 1 and incorporated by reference herein.

11.    As soon as the lease was executed, defendants promised to wire the security deposit directly to plaintiff's bank account.  After repeated requests by plaintiff for this payment and numerous [mis]representations by the defendants that the security deposit would be paid (or had been paid) prior to possession, defendants payment never materialized.  In fact, defendants even e-mailed their real estate agent, Daniel Johns ("Mr. Johns"), assuring him that they would contact their bank in London to arrange for the wire transfer for the security deposit and first month's rent.  A true and accurate copy of this email exchange is attached as EXHIBIT 2 and incorporated by reference herein.  This would be the first in a series of the defendants' material misrepresentations.

12.    In order to relieve the plaintiff's anxieties for holding the property available for the Tripletts without a security deposit, defendants then promised to provide an extra month's rent up front.  Plaintiff's real estate agent, Anne Burkin ("Mrs. Burkin"), summarized what was agreed upon by all parties in a pre-move in letter, which clearly called for this extra money to be provided to plaintiff within a "day or so."  A true and accurate copy of this email correspondence is attached as Exhibit 3 and incorporated by reference herein.  Contrary to their promise, the Tripletts never paid plaintiff the "extra month" of rent they promised.

13.    Upon taking possession of the premises on or around August 28, 2008, defendants paid the security deposit and one month's rent, *all in cash*.

14.    On or around September 26, 2008, defendants paid $9,300 in rent.[1]  Thereafter, defendants stopped making any payments altogether.

15.    At all relevant times, DR. DARVISH properly performed all duties and obligations required under the terms of the lease agreement.

16.    Plaintiff repeatedly requested that the Tripletts similarly abide by the terms of the

---

[1]    The monthly rental amount for the one year lease of the premises was $9,500, but defendants unilaterally reduced the September 2008 payment.

1    governing lease, to no avail.  Defendants displayed, instead, abusive and theatrical[2]

2    histrionics, making sham claims regarding the habitability of the property.[3]  When it

3    became clear that defendants had no intention of making any further lease payments while

4    holding the premises hostage,  the Tripletts were served with a three day notice to pay or

5    quit.  Upon the expiration of the three day notice to pay rent or quit,  defendants still

6    refused to pay rent and did not relinquish possession of the premises.  Therefore, plaintiff

7    timely filed and served an unlawful detainer action, Case No. SC101624, entitled

8    "Michael Darvish v. Paula Triplett and Peter Triplett", filed in Los Angeles

9    Superior Court, West District, Beverly Hills.  DR. DARVISH respectfully requests that

10   this court take judicial notice of the case, and all pleadings on file therein, pursuant to

11   FED. RULES OF EVID. § 201.

12   17.    On March 21, 2009 (two days prior to the scheduled unlawful detainer trial), defendants

13          abandoned the premises.

14   18.    On or about April 1, 2009, DR. DARVISH filed a First Amended Complaint for damages

15          against defendants for the rent due and owing on the balance of the lease term.

16   19.    On or about August 6, 2009, the Court awarded default judgment in favor of DR.

17          DARVISH for an amount in excess of $117,000.  A true and accurate copy of the

18          judgment as entered is attached as EXHIBIT 4 and incorporated by reference herein.

19   20.    Thereafter, defendants hired new counsel and attempted to have the judgment set aside

20          and/or voided in October 2009.  They were not successful.

21   21.    PAULA and PETER are ENGLISH CITIZENS, but currently reside in the United States.

22   22.    Plaintiff has recently learned that the Tripletts fraudulently secured and procured the lease

23          of the premises by providing false and misleading information in their lease application.

24   23.    Plaintiff entered into the lease agreement and permitted the Tripletts to take possession

---

[2]   PAULA is a former teenage actress, known for her character "Claire Scott" in the BBC show
      "Grange Hill."

[3]   It should be noted that when defendants finally abandoned the premises, plaintiff professionally
      cleaned the property and made it available for lease just four days later.  Defendants had broken
      a toilet seat, but generally left the premises in decent condition.  Plaintiff secured a new tenant,
      at a lesser rental amount, for a one year term commencing on May 15, 2009.

of the premises by justifiably relying on the false information.  Had Plaintiff been aware of the defendants' duplicity, plaintiff would never have entered into a lease agreement or permitted defendants take possession of the premises.

24.    Debtor and her husband PETER are utilizing the court system in the United States, both state and now bankruptcy courts, for their personal whims and to foment and further their illegal and fraudulent schemes to acquire valuable personal and real property leases and other property from unwitting innocent people such as plaintiff.

25.    Defendants repeated[4] their fraudulent conduct first with regard to obtaining the lease of plaintiff's property by false pretenses, and finally by PAULA'S filing of the within bankruptcy case to avoid paying this fraudulently arising debt to plaintiff.

26.    The loss will be the plaintiff's undue loss that must be avoided, and not a loss that should be allowed to inure to the benefit of defendants who incurred the debt in question by means of fraud and deceit.

27.    Coupled with the fact that the Tripletts procured the lease from DR. DARVISH based on material misrepresentations related to their financial position (including employment and income history, bank account balance, former residences, ownership of real property, and personal references, as detailed below), it appears more likely than not that PAULA, with PETER'S assistance, is utilizing the guise of bankruptcy to further a fraud against plaintiff.

28.    Discharge effects the underlying "fresh start" goal of bankruptcy proceedings: "(A) central purpose of the (Bankruptcy) Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."  <u>Grogan v. Garner</u> (1991) 498 US 279, 286, 111

---

[4]    During a post-judgment Judgment Debtor examination of PETER on or around January 2010, PETER revealed (after being threatened to be held in contempt of Court) that he and his family were leasing a home in Beverly Hills, California.  Subsequent investigations revealed the defendants had entered into a lease agreement with the owner of a home in Beverly Hills and stopped paying rent shortly after taking possession.  Plaintiff requests this Court take judicial notice of the recently file Adversary Case # 2-10-ap-01860-BB as further evidence of defendants pattern of defrauding landlords by entering into lease agreements for high end residences in the Los Angeles area, securing possession by providing the security deposit and a few months of lease, thereafter never intending to pay anything more, yet detaining the premises unlawfully.

S.Ct. 564, 659 (parentheses added; internal quotes omitted)  However, the "fresh start" resulting from bankruptcy discharge is limited to "honest but unfortunate" debtors. Grogan v. Garner, supra, 498 US at 286-287, 111 S.Ct. At 659; Marrama v. Citizens Bank of Mass. (2007) 549 US 365, 267, 127 S.Ct. 1105, 1107–"principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the honest but unfortunate debtor.'"

29.    There is nothing "honest" about this debtor, her bankruptcy petition, or her co-defendant husband and therefore neither deserves the protection of this Court.  And, the only "unfortunate" person in this case is the plaintiff for having fallen victim to the Tripletts' fraudulent ways.

30.    As such, the Bankruptcy Code provides exceptions to dischargeability based upon the conduct that caused the debt–i.e., "(t)hose exceptions that rely exclusively on a level of fault concern *extremely serious actions done knowingly or with a great risk of harm to others*."  In re Bayliss (1st Cir. 2002) 313 F3d 9, 18 (emphasis added).  PAULA and PETER'S charade is up; this Court must recognize them for the frauds that they are and punish them accordingly.  The blatant and audacious lies on their lease application caused plaintiff to enter into a lease agreement for the premises that would *never* had occurred had he known the truth.  Most importantly, plaintiff suffered significant pecuniary harm while defendants were holding his home hostage and living carelessly rent free for months.

31.    Consequently, this court has the authority to grant relief and award damages to plaintiff proximately caused by the actions of defendant and others cooperating in concert with her.

32.    For all of the foregoing reasons, DR. DARVISH respectfully requests that the Court declare defendants' debt to plaintiff to be non-dischargeable, dismiss PAULA'S bankruptcy petition, and award damages of no less than $128,964.03[5] [6]

---

[5]    This is the amount of the judgment as entered by the State Court ($117,122.82) plus daily post-judgment interest at a rate of $32.09 per day thereafter.  At the time the first amended complaint was file, 369 days had passed since the August 6, 2009 state court judgment was entered ($32.09 x 369= $11,841.21).

[6]    Plaintiff respectfully requests this Court take judicial notice of the recently file "Motion to Vacate the Automatic Stay for further proof in support of this Complaint pursuant to FED. RULES OF EVID. § 201.

33. Under 523(a)(2)(A) of the Bankruptcy Code, a debt for services obtained by the debtor under "false pretenses, a false representation, or actual fraud" is nondischargeable. 11 U.S.C. 523(a)(2)(A) (2000). "The purposes of th[is] provision are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to *ensure that the relief intended for honest debtors does not go to dishonest debtors*." (With emphasis added)  4 Collier on Bankruptcy P 523.08[1][a] (15th ed. rev. 2000).  In re Slyman, 234 F. 3d 1081 (9TH Cir. 2009)

34. Plaintiff is informed and believes, and thereon alleges that defendants engaged in fraudulent conduct leading up to and during the course of the residential lease described above, for which defendants suffered a civil judgment described above, and that but for defendants' fraud, plaintiff would not have leased the premises to defendants.

35. Defendants accomplished and perpetrated this reprehensible conduct by means of actual fraud, fraudulent writing, embezzlement, fraudulent concealment of property, all in violation of federal and California state law, evidenced by the factual allegations herein. In turn, plaintiff justifiably relied on defendants' false representations of material facts concerning their finances, residence, intention to perform under the lease; defendants fully *intended* that plaintiff rely on such representations; such reliance caused plaintiff to lease the property to defendants;  and the subsequent breach by defendants proximately caused plaintiff's damages of the loss of the lease income.  Under any rational view, the debt thereby incurred is non-dischargeable in bankruptcy because it is the direct result of defendants' fraud.

36. Specifically, plaintiff recently discovered the following specific lies:

a. RESIDENCE HISTORY: Defendants lease application states that defendants owned a home located at 7 Eddiscombe Road, London, England; however, official records do not show either defendant to have ever owned this property.  Records do indicate that the last transaction involving this address occurred on July 25, 2007, where it was sold to a buyer for 1,060,000 pounds sterling.  Defendants were not a party to that transaction.  In fact, plaintiff has not found any historical

1   evidence that defendants ever even resided at the premises as tenants paying rent.

2   Defendants also list a home located in Estepona, Spain and similarly claim former

3   ownership.  Spanish property records searched do not support this claim.

4   b. <u>EMPLOYMENT AND INCOME HISTORY</u>: Defendants lease application

5   states that their current employer was "Atlantic Crossing," and that the income as

6   the CEO of this "company" was $150,000 per year.  This representation is clearly

7   in conflict with the income and employment information PAULA has provided in

8   her bankruptcy petition.  Furthermore, PETER testified during a judgment debtor

9   examination in state court that this company dissolved long before their August

10   2008 move to the US.  The logical conclusion is that PAULA is either lying on her

11   bankruptcy petition, the defendants lied on their lease application, or both.

12   PAULA'S Chapter 7 bankruptcy is predicated upon a petition attested to under the

13   penalty of perjury; the information she has provided in support of her petition

14   should be regarded with a high degree of skepticism.

15   c. <u>BANK ACCOUNT INFORMATION</u>: Defendants application contains bank

16   account information for an account held in a bank in England with a balance of

17   92,000 Pounds Sterling, bank accounts in PAULA'S name, and "business accounts"

18   with additional sums of money!  (<u>See</u>, EXHIBIT 1, p.2 of the lease application)

19   This information also contradicts the bank account information provided by

20   PAULA in her bankruptcy petition, as she has clearly omitted listing any UK

21   accounts.    Defendants either lied on the application, PAULA lied in her

22   bankruptcy petition, or both.

23   d. <u>PERSONAL REFERENCES</u>: Defendants list two personal references who,

24   notably, have both cut off all contact with defendants very shortly after defendants

25   arrived in the United States.  Plaintiff has confirmed that the first reference, "Roni

26   and Claritza Stretch" only came to become acquainted with the defendants just

27   prior to their move to the United States, and not for 20 years as the lease

28   application claims.  Similarly, reference "Charmain Taylor" became acquainted with

1  the defendants only one year prior to the defendants arrival in the United States.

2  37.  Defendants either provided this information on their lease application because it was true,

3  or because they wanted to present a "rosy" picture of their financial situation to mislead

4  their prospective landlord (plaintiff).  If the information provided was true, then it conflicts

5  with the information provided in PAULA'S bankruptcy petition; if the information

6  provided is acknowledged as false, then clearly the debtor should be denied a discharge

7  based upon the conflicting information under applicable bankruptcy law.

8  38.  Had defendants been honest in the lease application and provided truthful, accurate

9  information, plaintiff would not have leased the premises to defendants.

10  39.  Consequently, the debt to plaintiff should be declared non-dischargeable based upon fraud.

11  Any less relief would promote an injustice and sanction  fraud.

12  40.  Plaintiff is further informed and believes and thereon alleges that defendant, by her

13  conduct, lies, omissions and misrepresentations with regard to above-described actions,

14  committed fraud against plaintiff and plaintiff's property interests under the aforesaid

15  residential lease of plaintiff's property.

16  41.  Plaintiff further expressly reserves its right under F.R.C.P. 4(h) to seek permission from

17  the Court in its discretion and upon such terms as are just to file and serve an amended

18  summons and complaint, and in order to clarify each and every claim and fact upon which

19  the claim is made against defendants and each of them, as necessity and prudence dictate

20  or as is otherwise required.

21  42.  Facts specific to each of the alleged statutory violations are set forth below.

22  <u>FIRST CAUSE OF ACTION</u>

23  <u>TO DECLARE THE DEBT TO PLAINTIFF TO BE NON-DISCHARGEABLE</u>

24  <u>BASED UPON VIOLATION OF 11 U.S.C. § 523(a)(2)(A)</u>

25  (Against Defendants Paula and Peter Triplett for

26  False Representation and Actual Fraud)

27  43.  Plaintiff incorporates by reference each and every allegation stated above as though fully

28  set forth herein.

44. Plaintiff alleges that defendant-debtor Paula Triplett (along with her husband, co-defendant Peter Triplett) defrauded plaintiff of property and property rights in plaintiff's residential property on Las Pulgas Road in Pacific Palisades (described above) by means of a false representation and actual fraud.

45. Defendants made false statements and representations pertaining to their former residence, employment history and personal references ("false statements") described more specifically below.

46. A debt...is not dischargeable to the extent obtained by "false pretenses, a false representation, or actual fraud..." 11 U. S.C. §523(a)(2)(A)

47. To except a debt from discharge under 11 U.S.C. § 523(a)(2)(A), the creditor must show that (1) the debtor made representations that at the time the debtor knew to be false; (2) the debtor made those representations with the intention and purpose of deceiving the creditor (scientor); (3) that the creditor justifiably relied on those representations; and (4) the creditor *sustained losses* as approximate result of the debtor's representations.  In re Eashai (9th Cir. 1996) 87 F3d 1082, 1086; In re Britton (9th Cir 1991) 950 F2d, 602, 604; In re Austin (8th Cir. BAP 2004) 317 BR525, 529-530

48. Here, defendants *knowingly and intentionally* made the following false statements ("false statements") in their lease application (See EXHIBIT 1, lease application):

   a. RESIDENCE HISTORY: Defendants lease application states that defendants owned a home located at 7 Eddiscombe Road, London, England; however, official records do not show either defendant to have ever owned this property.  Records do indicate that the last transaction involving this address occurred on July 25, 2007, where it was sold to a buyer for 1,060,000 pounds sterling.  Defendants were not a party to that transaction.  In fact, plaintiff has not found any historical evidence that defendants ever even resided at the premises at all as (paying) tenants!  Defendants also list a home located in Estepona, Spain and similarly claim former ownership.  Spanish property records searched do not support this claim, nor is there any evidence that they ever even resided at the premises

D AMENDED ADVERSARY COMPLAINT /CASE NO. 2-10-bk-142262-BB

at all as (paying) tenants!

b. <u>EMPLOYMENT HISTORY</u>: Defendants lease application states that their current employer was "Atlantic Crossing," and that the income as the CEO of this "company" was $150,000 per year.  This representation is clearly in conflict with the employment information PAULA has provided in her bankruptcy petition.  In fact, PETER had been unemployed for some time before arriving in the United States and PAULA was operating a public relations business called "RAW PR," although this information was not shared on their application. The logical conclusion is that PAULA is either lying on her bankruptcy petition, the defendants lied on their lease application, or both.   PAULA'S Chapter 7 bankruptcy is predicated upon a petition attested to under the penalty of perjury; the information she has provided in support of her petition should be regarded with a high degree of skepticism.

c. <u>PERSONAL REFERENCES</u>: Defendants list two personal references who, notably, have both cut off all contact with defendants very shortly after defendants arrived in the United States.  Plaintiff has confirmed that the first reference, "Roni and Claritza Stretch" only came to become acquainted with the defendants *just prior* to their move to the United States, and not for 20 years as the lease application claims.   Similarly, reference "Charmian Taylor" became acquainted with the defendants only one year prior to the defendants arrived in the United States.

49.    By the aforesaid material misrepresentations made by defendants regarding the lease of plaintiff's residential property, plaintiff was deceived into entering a one-year lease of his property to defendants.  Had plaintiff known of the falsity of defendants' statements at the time, he never would have entered into said lease with defendants.   At the time defendants, and each of them, made the false statements, they had no reasonable belief the statements were true and therefore were aware the statements were false and misleading.

50.    Defendants made these false statements with the intention and purpose of deceiving plaintiff because had defendants been honest, plaintiff would never have leased them the

property.

51.    Plaintiff's reliance thereon was justified because, at the time defendants made the statements, plaintiff had no reason to believe defendants were lying about their background, because plaintiff had no knowledge of any other facts at the time that would have placed him in a position to further inquire as to the accuracy of defendants' statements.  Furthermore, because the defendants had only recently arrived in the United States, they had no established domestic credit history.  Verification of their bank account information would have been impossible as British law precludes the release of this information.

52.    A person may justifiably rely on a representation "even if the falsity of the representation could have been ascertained upon investigation.  In other words, negligence in failing to discover an intentional misrepresentation" does not defeat justifiable reliance.  <u>In re Eashai</u>, supra, 87 F3d at 1090; <u>In re Medley</u> (9th Cir.BAP 1997) 214 BR 607, 613

53.    Based on such false statements, upon which plaintiff reasonably and justifiably relied, plaintiff, to his detriment, altered his legal position with respect to the property by leasing it to defendants.

54.    Contrary to defendants' representations, the statements were false, untrue and were made with a calculated intent to deceive plaintiff into leasing his property to defendants who had no intention at the time of honoring the lease, paying the rent agreed upon for the duration of the lease term, or otherwise complying with the material duties, provisions and requirements under the lease.

55.    As a direct and proximate result of defendants' false statements, defendants committed actual fraud upon plaintiff, and thereby caused plaintiff to part with a very valuable piece of residential property.  Had defendants fully performed under the lease, it would have produced $114,000.00 of rental income to plaintiff.

56.    In so acting, defendants, and each of them, acted jointly, and therefore should be held jointly and severally liable for all damages proximately caused and proven at trial.

57.    Such loss of valuable rental income was a direct and proximate result of defendants' fraud

1  and false representations, all in violation of 11 U. S.C. §523(a)(2)(A), thus warranting denial

2  of the discharge of the debt.

3  ## SECOND CAUSE OF ACTION

4  ## TO DECLARE THE DEBT TO PLAINTIFF TO BE NON-DISCHARGEABLE

5  ## BASED UPON VIOLATION OF 11 U.S.C. § 523(a)(2)(B)

6  (Against Defendants Paula and Peter Triplett for False Financial Statement)

7  58.   Plaintiff incorporates by reference each and every allegation stated above as though fully

8  set forth herein.

9  59.   Plaintiff alleges that defendant Paula Triplett (along with her husband, co-defendant Peter

10  Triplett) defrauded plaintiff of property and property rights in plaintiff's residential

11  property on Las Pulgas Road in Pacific Palisades (described above) by means of a false

12  writing (ie. Lease Application) described more specifically below.

13  60.   Money, property, services...is nondischargeable to the extent obtained by use of a statement

14  in writing: (1) That is materially false; (2) respecting the debtor's or an insider's financial

15  condition; (3) on which the creditor reasonably relied; and (4) that the debtor made or

16  published with the intent to deceive.  11 U. S.C. §523(a)(2)(B)

17  61.   Defendants made the following false financial statements when they provided plaintiff a

18  written lease application for the Pacific Palisades residence:

19  a. RESIDENCE HISTORY: Defendants lease application states that defendants

20  owned a home located at 7 Eddiscombe Road, London, England; however, official

21  records do not show either defendant to have ever owned this property.  Records

22  do indicate that the last transaction involving this address occurred on July 25,

23  2007, where it was sold to a buyer for 1,060,000 pounds sterling.  Defendants were

24  not a party to that transaction.  In fact, plaintiff has not found any historical

25  evidence that defendants ever even resided at the premises at all as (paying)

26  tenants!  Defendants also list a home located in Estepona, Spain and similarly

27  claim former ownership.  Spanish property records searched do not support this

28  claim, nor is there any evidence that they ever even resided at the premises

1        at all as (paying) tenants!

2            b. <u>EMPLOYMENT AND INCOME HISTORY</u>: Defendants lease application

3        states that their current employer was "Atlantic Crossing," and that the income as

4        the CEO of this "company" was $150,000 per year. This representation is clearly

5        in conflict with the income and employment information PAULA has provided in

6        her bankruptcy petition. Furthermore, PETER testified during a judgment debtor

7        examination in state court that this company dissolved long before their August

8        2008 move to the US. The logical conclusion is that PAULA is either lying on her

9        bankruptcy petition, the defendants lied on their lease application, or both.

10       PAULA'S Chapter 7 bankruptcy is predicated upon a petition attested to under the

11       penalty of perjury; the information she has provided in support of her petition

12       should be regarded with a high degree of skepticism.

13           c. <u>BANK ACCOUNT INFORMATION</u>: Defendants application contains bank

14       account information for an account held in a bank in England with a balance of

15       92,000 Pounds Sterling, bank accounts in PAULA'S name, and "business accounts"

16       with additional sums of money!  (<u>See</u>, EXHIBIT 1, p.2 of the lease application)

17       This information also contradicts the bank account information provided by

18       PAULA in her bankruptcy petition, as she has clearly omitted listing this account.

19       Defendants either lied on the application, PAULA either lied in her bankruptcy

20       petition, or both.

21           d. <u>PERSONAL REFERENCES</u>: Defendants list two personal references who,

22       notably, have both cut off all contact with defendants very shortly after defendants

23       arrived in the United States. Plaintiff has confirmed that the first reference, "Roni

24       and Claritza Stretch" only came to become acquainted with the defendants just

25       prior to their move to the United States, and not for 20 years as the lease

26       application claims. Similarly, reference "Charmain Taylor" became acquainted with

27       the defendants only one year prior to the defendants arrived in the United States.

28   62.    A creditor seeking to establish nondischargeability of debts obtained through false financial

statements must show: (1) That the creditor provided the debtor with...property...based on a written representation of fact by the debtor as the debtor's financial condition; (2) that the representation was materially false; (3) the debtor made the representation with the intention of deceiving the debtor; (4) the creditor's reliance was reasonable; and (4) damage proximately resulted form the representation.  In re Siriani (9th Cir 1992) 967 F2d 302, 304; In re Candland (9th Cir. 1996) 90 F3d 1466, 1469

63.    Here, by the aforesaid false financial statements written by defendants in their lease application, defendants were attempting to paint a more "rosy" picture of their financial circumstances in order to gain possession of the premises by providing false information regarding their income, employment history and bank account information.  Even their references were provided in an attempt to bolster the image that defendants had a healthy financial situation, as it was later discovered that both references provided were rather well to do.  In fact at the time defendants, and each of them, made the false statements as to their financial background, assets, former residence, employment history and personal references, they had no reasonable belief in them and knowingly were aware the statements were false and misleading.

64.    Had plaintiff know of the falsity of defendants' statements at the time they were made, such that defendants were actually unemployed and had arrived in this country without secure employment, or that they had not had any steady income for some time, or that their bank account did not contain the funds represented, he never would have entered into said lease with these defendants.  It is common sense that a landlord wants tenants who will hold their end of the bargain, ie. pay rent as specified under the terms of the lease.

65.    Defendants secured the lease of the premises by submitting fabricated material financial statements.  The financial statement must both be inaccurate and contain important and substantial untruths of the type that would generally affect the creditor's decision making process.  In re Candland (9th Cir. 1996) 90 F3d 1466, 1470; In re Greene (9th Cir. 1989) 96 BR 279, 283.   Significant misrepresentations of financial condition are generally

considered material. <u>In re Candland</u>, supra, 90 F3d at 1470. Defendants inflated their supposed net-worth in order to appear wealthy and well off financially. Plaintiff would never have considered defendants as qualified tenants had their financial statements accurately reflected the destitute financial situation defendants were actually in. Plaintiff never wished to have been involved in this nightmare ordeal with the defendants, and would never have entered into a lease agreement or turned over possession to the defendants had he known the truth. A landlord's capability to make a wise business decision is materially altered when a prospective tenant's application is nothing but a mere sham designed to deceive the landlord into turning over his premises to virtual thieves.

66.    The scienter requirement is the same as under §523 (a)(2)(A) discussed above. A debtor's failure to question the accuracy of the documents constitutes a reckless disregard for the truth, justifying a finding of fraudulent intent under §523(a)(2)(B). <u>In re Oh</u> (BC CD CA 2002) 278 BR 844, 858-860; <u>In re Weiner</u> (BC ND OH 1988) 86 BR 912, 915–sufficient that debtor signed financial statements in reckless disregard of their content (irrelevant that debtor did not personally prepare and present statements to bank). Here, defendants audacity in presenting false material financial information indicates a clear reckless disregard for honesty in the most basic form; if defendants were embarrassed about their financial situation, they should have chose to rent a cheaper home in a less desirable and affluent neighborhood.

67.    Based on such false statements, upon which plaintiff reasonably and justifiably relied, plaintiff, to his detriment, altered his legal position with respect to the lease property by leasing it to defendants.

68.    At the time defendants made the false statements to plaintiff, they knew them to be false, or had no reasonable belief in the truth of said statements, and made said false statements with an intent to deceive plaintiff into leasing his valuable residence to defendants based on such false statements.

69.    Plaintiff's reliance thereon was justified because, at the time defendants made the statements, plaintiff had no reason to question whether defendants were lying about their

1  financial situation because plaintiff had no knowledge of any other facts that would have

2  placed him in a position to further inquire as to the accuracy of defendants' statements.

3  70.    Contrary to defendants' representations, defendants statements were false, untrue and were

4  made with an intent to deceive plaintiff into leasing his property to defendants who had

5  no intention at the time of honoring the lease, paying for the rent agreed upon for the

6  lease term, or otherwise complying with the material duties, provisions and requirements

7  under the lease.

8  71.    As a direct and proximate result of defendants' false financial statements, defendants

9  committed actual fraud upon plaintiff, and thereby caused plaintiff to part with a very

10  valuable piece of residential property in that, had defendants fully performed under the

11  lease, it would have produced $114,000.00 of rental income to plaintiff.

12  72.    Had plaintiff know the true facts, he would have rented to another more reputable,

13  qualified, and trustworthy tenant who did not lie or deceive and who would not have

14  caused plaintiff to lose valuable rental income.

15  73.    As a direct and proximate result of defendants' actions, lies and omissions alleged herein,

16  plaintiff has been damaged in an amount exceeding $120,000.00, plus costs and reasonable

17  attorneys' fees necessitated by having to file the within action against defendants, plus

18  interest at the legal rate thereon from the date of defendants' fraud, and further damages

19  according to proof at trial.

20  74.    In so acting, defendants, and each of them, acted jointly, and therefore should be held

21  jointly and severally liable for all damages proximately caused and proven at trial.

22  THIRD CAUSE OF ACTION

23  TO DECLARE THE DEBT TO PLAINTIFF TO BE NON-DISCHARGEABLE

24  BASED UPON VIOLATION OF

25  11 U. S. C. § 727(a)(4)(A)

26  (Against Defendant Paula Triplett for False Oath or Account)

27  75.    Plaintiff incorporates by reference each and every allegation stated above as though fully

28  set forth herein.

76.     11 U. S. C. § 727(a)(4)(A) prohibits discharge of a debt where, as here, the debtor presents a false oath or account knowingly and fraudulently in connection with a case.

77.     By the actions of defendants, and debtor Paula Triplett, alleged above, defendant made and presented to the bankruptcy court, the U. S. Bankruptcy Trustee, and plaintiff a false oath or account regarding defendant's actual assets, financial holdings, employment and other related matters, all of which pertain to the debtor's ability to pay for the underlying lease debt fraudulently obtained and to the instant bankruptcy case, to be detailed below.

78.     A discharge will be denied where (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. 11 U. S. C. § 727(a)(4)(A); Williamson v. Fireman's Fund Ins. Co. (4th Cir. 1987) 828 F2d 249, 250; In re Coombs (BC SD CA 1996) 193 BR 557, 563.  The false statements must be made under oath during the course of bankruptcy proceedings.  In re Beeber (BC ED NY 1999) 239 BR 13, 29.

79.     Furthermore, the debtor's amendment of false schedules does not negate the original schedules.  In re Sholdra (5th Cir. 2001) 249 F3d 380, 382; Mazer v. United States (7th Cir. 1962) 298 F2d 579.

80.     The following false statements were made under oath by PAULA:

        a. During the first meeting of the creditor's, PAULA was asked why she listed 1909 Benedict Canyon Drive, Beverly Hills, CA 90210 as her address of residence on her bankruptcy petition (a lie under oath for having listed it on her bankruptcy petition) when she had been evicted from the premises on or around the time she had filed for bankruptcy.  PAULA replied that she did not know, and proceeded to provide another address, 1132 7th Street, Santa Monica, California (omitting ironically any particular unit number) and promised to amend her petition accordingly.  However, representing the Santa Monica address was also a lie! PAULA has never resided at this Santa Monica address.

        b. PAULA did not list other names which she uses and denied under oath that she

uses or has used any other names in the past eight years, although she has used: PAULA A TRIPLETT, PAULA ANN BLAND and PAULA BLAND. According to her husband, most of their affairs were in PAULA'S name alone and she has used Paula A Triplett to open at least one bank account (Wells Fargo).

c.  PAULA'S original statement of financial affairs and amended statement of financial affairs both fail to list that she was receiving financial assistance from PETER'S PARENTS since September of 2009.  This fact was testified to, under oath, by her husband, during judgment debtor examinations in state court.

d.  Her amended statement of financial affairs fails to list two small claims actions against her, filed within one year from the date of her bankruptcy case.  LA Superior Court Case number 09A092338 (Palisades Pool Supply, Inc. v. Paula Triplett) and LA Superior Court Case number 09A02465 (George Castaneda v. Paula Triplett, et al.)

e.  PAULA'S statement of financial affairs fails to account for her residency between 3/21/2009 (when she abandoned the premises involved in this case) and her subsequent lease on or around 6/2009 of 1909 Benedict Canyon Drive in Beverly Hills; it also fails to account for where she resided after she was evicted from 1909 Benedict Canyon Drive on or around 2/2010 through the filing of this amended statement of financial affairs.  Notably, the Santa Monica address she gave at the meeting of the creditors is also not listed, most likely because she never resided there and lied at the meeting of the creditors; otherwise, it should be listed on her amended statement of financial affairs.  Either she lied at the meeting of the creditors, or under the penalty of perjury on her statement of financial affairs–or even more plausible is that PAULA has yet to tell the truth. *Further, PAULA entered into a new lease agreement for the lease of a home in Westwood, California on 2/25/2010*; the very same day as the first meeting of the creditors but she failed to provide this new address, giving instead the false Santa Monica address.

f.  PAULA'S amended statement of financial affairs also fails to list, as question 18 requests, the name, addresses, etc. of all business in which the debtor was an officer, director, etc. within six years immediately preceding the commencement of this case; she fails to name RAW PR (the PR agency she was head of in London), RAW PR LA (the Los Angeles spin off of the London PR firm), and DISH (a restaurant which she and her husband were planning on opening.

g. On PAULA'S Amended Schedule F filed 4/23/2010, she lists for the first time the tuition debt owed to Calvary Church of Pacific Palisades, with the amount of claim unknown.  During the meeting of the creditors when asked why this creditor was not listed, PAULA stated that she did not realize she owed them any money and denied that her children were asked not to return to school after she owed no less than $26,000 in unpaid tuition to the school.  Also, at the time this amended Schedule F was filed, PETER had testified under oath, in open court, that they were currently behind on tuition payments for their children's new private school.

81. The law protects honest debtors by affording them a fresh start via discharge of all debts not secured by fraud.  Defendant's conduct with respect to violations of the Code by presenting a false oath or account as described to the Court and the parties as to the actual state of their true assets constitutes a dishonest application for a discharge.

82. Consequently, PAULA is not entitled to a discharge of the lease debt she owes to plaintiff or any debt for that matter.

83. Plaintiff is PAULA's largest general, unsecured creditor and therefore has standing to bring this cause of action.

## PRAYER

WHEREFORE, Plaintiff prays for relief against Defendants, and each of them, as follows:

1. For compensatory damages of $128,964.03 and further damages according to proof, under all causes of action;

2. For exemplary and punitive damages based upon defendants' fraud according to proof,

1  under all causes of action;

2      3. For an order declaring defendant's debt to plaintiff to be non-dischargeable;

3      4. For further relief as the court deems fair and just;

4      5. For costs and reasonable attorney's fees.

5

6

7  DATED: November 12, 2010

8                              RACHEL M. DARVISH,

9

10                             /s/ Rachel M. Darvish
                               Attorney for Plaintiff
11                             MICHAEL DARVISH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28